UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARK ANTHONY BRANDS INC. D/B/A MIKE'S HARD LEMONADE CO., | CASE NO. 1:24-cv-02104-CEF |
| Plaintiff, | JUDGE CHARLES ESQUE FLEMING |
| v. | |
| THE HOUSE OF LAROSE, INC., | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

Before the Court is the Motion of Defendant, The House of LaRose, Inc. ("LaRose"), to Dismiss Plaintiff Mark Anthony Brands Inc.'s ("MABI's") Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. (ECF No. 16). LaRose argues that MABI's claims are moot because the transaction at the center of the complaint has been terminated. (*Id.* at PageID #343). MABI opposed LaRose's motion. (ECF No. 19). LaRose filed a reply in support of its motion. (ECF No. 20). For the reasons set forth below, LaRose's motion is **DENIED**.

I.  FACTUAL BACKGROUND

   A.  The Wholesaler Appointment Agreement

MABI manufactures and sells several brands that are distributed by LaRose—a licensed beer and wine wholesaler—in three Ohio counties. (ECF No. 1, Compl., PageID #5–6). In November 2009, MABI and LaRose entered into a Wholesaler Appointment Agreement ("Agreement"), under which LaRose became the exclusive wholesaler and distributor of certain MABI products in Ashtabula, Geauga, and Lake Counties, Ohio (the "Market Area"). (*Id.* at PageID #6).

1

Section 8 of the Agreement concerns "Assignment, Changes in Ownership, Management and Succession." (ECF No. 1-3, PageID #46).  In subsection 8.1, MABI represents that it selected LaRose as its wholesaler and distributor based on the "qualifications and experience of [LaRose's] ownership and management," and LaRose's "ability to promote and increase the sales of [MABI] Brands in the Market Area in competition with products represented by other distributors that are directly competitive with the [MABI] Brands." (*Id.*).  MABI thus sought to protect its relationship with LaRose and its owners:

> Accordingly, the parties further acknowledge that, in connection with any proposed change in the ownership or management of [LaRose] or attempted transfer by [LaRose] of the distribution rights granted in this Agreement, [MABI] has a reasonable and legitimate interest in making sure that, based upon the business judgment of [MABI], any such changes or transfers will not adversely affect the appropriate promotion and sale of the [MABI's] Brands on a competitive basis in the Market Area.  The parties therefore acknowledge and agree that the terms and conditions pertaining to such changes and transfers as set forth in this Section 8 are reasonable and appropriate.

(*Id.*).  The Agreement goes on to reserve two express rights to MABI in the event that LaRose decided to "Transfer" any part of LaRose's business "in which the [MABI] Business is included as part of the transfer or disposition." (*Id.*).  First, "Transfer" in the Agreement means:

> ***[A]ny proposed or actual sale***, transfer, assignment, conveyance, or other disposition of all or any portion of [LaRose's] business in which the [MABI] Business is included as part of the transfer or disposition, other than a Family Estate Planning Transfer as defined below.  The term Transfer includes transfers that occur as a result of a transfer of assets, except for product sales made to duly licensed retailers in the Market Area, (referred to herein as an "Asset Transfer") as well as transfers that occur as a result of an Ownership Transfer, as defined below.

(*Id.*) (emphasis added).

2

Subsection 8.3 and its subsections describes MABI's "Rights of First Refusal and Approval." (*Id.* at PageID #47). Subsection 8.3.1 and its subsections concern MABI's "Right of First Refusal." (*Id.* at PageID #48). It states:

> With respect to any proposed Transfer, [LaRose] gives to [MABI] a prior right of first refusal in accordance with the provisions set forth below, so that [MABI] may, at its option, purchase the [MABI] Business so that [MABI] can appoint one or more new wholesalers who in [MABI's] business judgment are best qualified to promote and market the [MABI] Brands in the Market Area. [MABI] may, in its sole discretion, assign its rights under this section to a third-party of [MABI's] choosing, without recourse to [MABI].

(*Id.*). The Agreement goes on to explain the procedures and deadlines by which the parties must accomplish this process. (*Id.* at PageID #48–49).

Subsection 8.3.2 then provides for MABI's "Right of Approval," which is triggered when MABI does not exercise its right of first refusal. (*Id.* and PageID #49). When that happens, LaRose "may proceed to close the proposed Transfer, provided that [LaRose] provides [MABI] with a prior right of approval of the Proposed Purchaser as set forth in this section." (*Id.*). Again, the Agreement goes on to explain the procedures and deadlines by which the parties must accomplish this process.

### B. LaRose's Proposed "Transfer"

On August 19, 2024, LaRose entered into an Equity Purchase Agreement ("Purchase Agreement") to sell its entire business, including its contractual distribution rights to MABI's products, to Columbus Distributing Company ("Columbus") (the "Proposed Transfer"). (*Id.* at PageID #2–3). The next day, LaRose informed MABI of the Proposed Transfer. (*Id.* at PageID #11). Over the next several months, despite multiple requests by MABI that LaRose follow the agreed-upon "Transfer" process, LaRose allegedly refused to provide MABI the opportunity to exercise its rights of first refusal or approval. (*Id.* at PageID #3). In a letter to MABI on October

3

22, 2024, LaRose informed MABI that it would not honor either contractual right because they violate Ohio Rev. Code Ann. § 4301.24(b) (West 2021).  Since Ohio law prohibits a manufacturer from having any "financial interest, directly or indirectly, by stock ownership, or through interlocking directors in a corporation, or otherwise, in the establishment, maintenance, or promotion in the business of any wholesale distributor," LaRose claimed that "MABI's purported right of first refusal is void ab initio." (ECF No. 1-16, Ex. N, PageID #210).  MABI told LaRose that it did not believe §4301.24(b) applied to its rights under the Agreement and sought adequate assurance from LaRose that it would not close the Proposed Transfer.  (ECF No. 1, PageID #20-21; ECF No. 1-18, PageID #220).  LaRose did not respond to that request.  (ECF No. 1, PageID #21).  MABI then filed a two-count complaint against LaRose for (1) Declaratory Judgment ("Count I") and (2) Anticipatory Breach of Contract and Breach of Good Faith and Fair Dealing ("Count II").  (*Id.* at PageID #24; 28).

## II.   PROCEDURAL HISTORY

On February 5, 2025, LaRose notified MABI that the Proposed Transfer had been terminated and would not close.  (ECF No. 16-1, Ex. 1, PageID #356).  On February 10, 2025, LaRose filed a motion to dismiss all claims under Rule 12(b)(1), arguing that MABI's claims are moot because "the transaction which MABI is attempting to prevent . . . has been terminated," thus causing MABI's complaint to become moot.  (ECF No. 16, PageID #343).  MABI responds that none of the relief it seeks is resolved by the termination of the Proposed Transfer, which means that this case remains a "live case or controversy" as required by Article III of the United States Constitution.  (ECF No. 19, PageID #386).

4

### III. LEGAL STANDARD

LaRose moves to dismiss MABI's complaint under Fed. R. Civ. P. 12(b)(1), facially attacking the sufficiency of the complaint. (ECF No. 16); *see United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (explaining that facial attacks challenge the sufficiency of the pleading itself). *Id.* When deciding such a motion, the court must accept all material allegations in the complaint as true and must construe the facts in favor of the non-moving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). The plaintiff has the burden of proving that subject-matter jurisdiction exists. *Giesse v. Sec'y of HHS*, 522 F.3d 697, 702 (6th Cir. 2008). Though courts generally restrict their review to the four-corners of the complaint, they may consider exhibits attached to defendants' motions to dismiss "so long as they are referred to in the complaint and are central to the claims contained therein." *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 455 (6th Cir. 2024) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)).

Article III limits the jurisdiction of federal courts to ongoing "cases" and "controversies." *Chafin v. Chafin*, 568 U.S. 165, 171 (2013). To invoke that jurisdiction, "a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision"—or more simply put, standing. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). But the injury attributed to the defendant and the court's ability to redress it must persist throughout the life of the case. *Id.* at 477–78 (citing *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988)). When the controversy dies—for example, the plaintiff's injury is redressed in some other way or the court loses the ability to redress it due to some intervening act—the case becomes moot and the federal court loses jurisdiction to hear it, thus requiring dismissal for mootness. *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) (explaining that a case becomes

5

moot when the issues presented are no longer live or the parties lack a cognizable interest in the outcome). Establishing mootness requires satisfaction of a heavy burden. "[A] case becomes moot only when subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *City of Parma v. Cingular Wireless, LLC*, 200 F. App'x 423, 429 (6th Cir. 2006) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

## IV. DISCUSSION

MABI seeks, in part, a judgment pursuant to the Ohio Declaratory Judgment Act, Ohio Rev. Code § 2721 *et seq.*, declaring LaRose's obligations under the Agreement. (ECF No. 1, Compl., PageID #25). The Ohio Declaratory Judgment Act, Ohio Rev. Code § 2721 *et seq.*, provides that "any person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations under it." Ohio Rev. Code Ann. § 2721.03 (West 2019). Such a declaration may be made either before or after there has been a breach of the contract. *Id.* § 2721.04. Ohio law allows the filing of a declaratory judgment action only to decide "an actual controversy, the resolution of which will confer certain rights or status upon the litigants." *Mid-Am Fire & Cas. Co. v. Heasley*, 863 N.E.2d 142, 145 (Ohio 2007). In this context, an actual controversy exists when there is a "genuine dispute between parties having adverse legal interest of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Cool v. Frenchko*, 200 N.E.3d 562, 569 (Ohio Ct. App. 2022). MABI's claims under Count II persist as a live case or controversy.

In Ohio, an anticipatory breach of contract occurs when one party to a contract refuses to perform under the contract's terms. *Sunesis Trucking Co. v. Thistledown Racetrack, L.L.C.*, 22

N.E.3d 190, 195 (Ohio Ct. App. 2014); *see Farmers Comm. Co. v. Burks*, 719 N.E.2d 980, 990 (Ohio Ct. App. 1998) (explaining that an anticipatory breach of a contract occurs before a breach is realized). Anticipatory breach of contract requires the plaintiff to show that he and the defendant were bound by a contract obligating the defendant to perform, and "by word or deed, the defendant refused future performance, causing damage to the plaintiff." *Sunesis Trucking*, 22 N.E.3d at 195–96. "If a party reasonably believes that the other party will not perform, "that party may demand adequate assurance from the other; failure to provide such assurance constitutes a repudiation of the contract." *Haman Enters. v. Sharper Impressions Painting Co.*, 50 N.E.3d 924, 930 (Ohio Ct. App. 2015). Whether a party has truly repudiated or merely cast doubt on its future performance is a question of fact. *Farmers*, 719 N.E.2d at 990.

MABI alleges that, on multiple occasions, LaRose "gave written and verbal notice" that it would not honor Section 8 of the Agreement. (ECF No. 1, PageID #28). Indeed, LaRose told MABI in its October 22, 2024 letter that LaRose considered MABI's rights of first refusal and approval to be "void ab initio." (ECF No. 1-16, Ex. N, PageID #210). When MABI emailed LaRose on November 5, 2024, it demanded adequate assurance, stating:

> We write to ask whether [the Transfer date under the Purchase Agreement] has been extended by agreement, or whether LaRose intends to close the contemplated transaction on or before that date. If you intend to close the transaction, we want to reiterate the importance of informing MABI of any such intended closing date with as much notice as possible, but no later than 48 hours before any anticipated closing date so that MABI can seek judicial guidance to safeguard its rights and interest under the [Agreement]. Of course, MABI stands ready to decide whether to exercise its right of first refusal once it is provided the information required under the terms of the Agreement and, to the extent it becomes applicable, its right of approval of the transaction.

(ECF No. 1-18, PageID #220). LaRose did not respond to that email. (ECF No. 1, PageID #21). In its motion to dismiss, LaRose does not deny that it repudiated Section 8 of the Agreement. (*See*

*generally*, ECF No. 16-1). Rather, LaRose argues that the termination of the Proposed Transfer eliminates any redressable injury that MABI could have sustained as the result of the Proposed Transfer. (*Id.* at PageID #350).

The Proposed Transfer's termination did not nullify MABI's claims in either Count I or Count II. LaRose informed MABI in the October 22, 2024 letter that it has no intent of ever honoring any of the terms in Section 8 of the Agreement. (ECF No. 1-16, Ex. N, PageID #210). Thus, there is a contractual dispute between the parties as to whether MABI can enforce the protections it claims to have bargained for. *See Mid-Am. Fire & Cas. Co. v. Healey*, 863 N.E.2d 142, 145 (Ohio 2007) (quoting *Ohio Farmers Indemn. Co. v. Chames*, 163 N.E.2d 367, 371 (Ohio 1959) (explaining that, in Ohio, declaratory judgment on a contract disposes of "uncertain or disputed obligations," which actually and genuinely threaten the plaintiff's position)).

LaRose's claim that any final order in this case would be an impermissible advisory opinion is misguided. Indeed, a declaratory judgment is a proper judicial resolution of a "case or controversy" only when resolution of the dispute "affects the behavior of the defendant towards the plaintiff." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987). A declaratory judgment *in this case* will determine whether Section 8 of the Agreement is valid and enforceable against LaRose, which will directly impact the way it behaves toward MABI vis-à-vis any future sale of its business. That the Proposed Transfer did not close does not make this dispute hypothetical, nor this Court's order declaring the parties' rights and responsibilities under the Agreement an academic exercise without practical effect. While true that MABI's contractual rights are not so imminently threatened as they were before the Proposed Transfer's termination, the threat to MABI's contractual rights is sufficiently immediate for this action to proceed. *See Allstate Ins. Co. v. Long*, Nos. 2001-P-0038 & 2001-P-0039, 2003 WL 102612, at *2 (Ohio Ct. App. Jan. 10, 2003) (explaining that, even after

a case is dismissed, a party's right to refile the action within the statute of limitations constitutes a sufficiently immediate threat to the other party's obligations under an insurance contract to maintain a declaratory judgment action).

Notwithstanding the remedy implicit in obtaining a declaratory judgment, which provides practical relief for Count II,[1] MABI's complaint seeks other remedies related to Count II as well. MABI asks that "LaRose be enjoined from further breaching the Agreement," and that MABI be awarded "attorneys' fees, costs, all pre- and post-judgment interest allowed by law or equity, and all other such relief, both at law and in equity, that the Court may deem appropriate and to which MABI is justly entitled."  (ECF No. 1, PageID #29–30).  Therefore, all the ingredients of a live case and controversy—an injury, redressable by the court and allegedly caused by LaRose—remain.  Since this case is not moot, LaRose's motion to dismiss must be **DENIED**.

## V. CONCLUSION

For the reasons set forth above, MABI's claims remain live and justiciable, and this Court has subject-matter jurisdiction to consider MABI's Complaint.  The cancellation of the Proposed Transaction does not moot MABI's request for a declaratory judgment or its claim for anticipatory breach of contract and breach of duty of good faith and fair dealing.  As such, LaRose's Motion to Dismiss Under Rule 12(b)(1) is **DENIED**.

**IT IS SO ORDERED.**

Date: September 2, 2025

*(signature: Charles Fleming)*

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**

---

[1] *Montana v. United States*, 440 U.S. 147, 157–58 (1979) (declaratory judgment has precedential and collateral estoppel effect)).